UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JOHN DOE,

    Plaintiff,

   -against-

COLGATE UNIVERSITY, COLGATE UNIVERSITY
BOARD OF TRUSTEES, JEFFREY HERBST,
individually and as agent for Colgate University,
SUZY M. NELSON, individually and as agent for
Colgate University, KIMBERLY TAYLOR,
individually and as agent for Colgate University,
MARILYN RUGG, individually and as agent for
Colgate University, VALERIE BROGAN,
individually and as agent for Colgate University,
and TAMALA FLACK, individually and as agent
for Colgate University,

    Defendants.
-------------------------------------------------------------------X

Civil Action No: 5:15-CV-1069
(LEK/DEP)

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION TO PROCEED UNDER
<u>PSEUDONYM AND FOR PROTECTIVE ORDER</u>**

NESENOFF & MILTENBERG, LLP
Attorneys for Plaintiff
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO PROCEED UNDER PSEUDONYM AND FOR PROTECTIVE ORDER

Plaintiff John Doe, ("Plaintiff") by his attorneys, Nesenoff & Miltenberg, LLP, hereby seeks authorization to file a Complaint in the above-captioned matter as a pseudonymous Plaintiff. In light of the serious nature of the allegations contained in the Complaint, Plaintiff is justifiably concerned about the possibility of acts of reprisal that could further prevent Plaintiff from proceeding with his future endeavors, and inflict further harm. Plaintiff's identity as described in the Complaint should not be disclosed to the public due to the nature of the allegations in said Complaint. See Declaration of Andrew T. Miltenberg, Esq. ("Miltenberg Decl.") attached to Plaintiff's *Ex Parte* Motion to Proceed Under Pseudonym and for Protective Order.

Plaintiff is prepared to provide a statement of his true identity under seal, upon the Court's request.

## STATEMENT OF FACTS

### The Night of October 28-29, 2011 ("Incident 1")

Plaintiff entered Colgate as a freshman in the fall of 2011. On October 28, 2011, Plaintiff joined with other friends from Curtis Hall, his dormitory, to go out to a party. One of the friends was Jane Doe 1, who was also a freshman, and one of Plaintiff's good friends.

Jane Doe 1 informed everyone that evening that she was ill and was suffering from mononucleosis. While at the party, Jane Doe 1 appeared to be intoxicated and the group of friends decided that she should go back to her dorm room. It was determined that, because Plaintiff was the most sober person among the group, he would walk Jane Doe 1 back to her room.

While Plaintiff accompanied Jane Doe 1 back to her room, Jane Doe 1 began behaving erratically and repeatedly tried to run into the lake. Plaintiff stopped her, but Jane Doe 1 caught him off guard at one point and got her foot in the water. During the walk home, Plaintiff gave Jane Doe 1 his sweatshirt when she indicated she was cold. Once they arrived at Jane Doe 1's room, Plaintiff made sure that Jane Doe 1 took her shoes off because they were soaked and freezing.

Jane Doe 1 began undressing, presumably to get ready for bed. Plaintiff did not leave at that time because Jane Doe 1 was still talking to him and he wanted to ensure that she made it safely to bed. Jane Doe 1 thanked Plaintiff for making sure that she got home safely. Jane Doe 1 removed her own clothing, down to her underwear, and hugged Plaintiff. Although this confused Plaintiff because nothing similar had ever happened during the course of their friendship, Plaintiff hugged her back and started touching her breasts. Although Jane Doe did not object or otherwise express that she wanted him to stop, Plaintiff quickly realized that he should stop, and returned to his own dorm room.

### The Night of February 11-12, 2012 ("Incident 2")

On the evening of February 11, 2012, Plaintiff attended a fraternity rush party. Although he has very limited recall of the evening, Plaintiff believes he consumed approximately twenty (20) to twenty-five (25) beers and also smoked marijuana. He was evidently extremely inebriated, as he became ill from drinking, and was vomiting and stumbling. His precarious condition was readily apparent to anyone who came into contact with him, including Jane Doe 1 and Jane Doe 2. Plaintiff's memory of the evening is limited to only fragments of events.

The first recollection Plaintiff has of the evening is walking back towards the dorm, with one of his arms around Jane Doe 1 and the other arm around Jane Doe 2. Because they were all

2

friends, Plaintiff recalls thinking that Jane Doe 1 and Jane Doe 2 must have found him in a helpless state and decided to help him back to his dorm room.

Plaintiff's next memory is of being in a dorm room in Center Stillman. He recalls sitting in the room and kissing Jane Doe 2. He also recalls that there was marijuana being passed around the room but he does not recall smoking it.

Plaintiff's next memory is of being in Jane Doe 1's room. He believes Jane Doe 1 and Jane Doe 2 brought him there, but he does not know why they took him there instead of back to his own room given his condition. Plaintiff vaguely recalls that Jane Doe 1 was now wearing a shirt and no bra, and Jane Doe 2 was now wearing a bra and no shirt.

Plaintiff's next recollection is of being on Jane Doe 1's bed, with Jane Doe 2 on top of him, shirtless and kissing him. Jane Doe 1 was no longer in the room; he later learned that she had gone downstairs with his friends.

Plaintiff believes he then fell asleep, as his next snapshot of the evening involves a feeling of waking up, when Jane Doe 2 opened the door to leave and the light from the hallway shined in his face. Jane Doe 2 said something to the effect of, "I'm going to bed" and Plaintiff fell back asleep.

Plaintiff woke up at 8:00 a.m., alone in Jane Doe 1's room. He went downstairs to his room, texting Jane Doe 2 on the way, to say something along the lines of, "Hey, I don't remember much of last night, but I know I was with you, so I am sorry if I made a fool of myself and I hope we are okay." She later responded, "Don't worry, we're fine!"

Plaintiff got his toothbrush from his room and went to the bathroom to brush his teeth. There, he ran into his best friend, S.M., who asked if Plaintiff recalled the prior evening. Plaintiff responded that he got drunk and ended up kissing Jane Doe 2. Plaintiff further indicated that he

3

was not happy about this, and he never would have kissed her while sober, because he had a crush on Jane Doe 2's ex-roommate. Coincidentally, Plaintiff had finally worked up the courage to ask Jane Doe 2's ex-roommate to a Formal, which was set to take place two days later.

S.M. told Plaintiff that the people on his floor were upset because he and Jane Doe 2 had kicked Jane Doe 1 and her roommate out of their own room. Plaintiff was extremely embarrassed, and even more so when he found out that his date for the upcoming formal had walked in on him and Jane Doe 2 kissing; Plaintiff was devastated when she subsequently told him to find a new date to the formal.

### The Night of April 28-29, 2012 ("Incident 3")

On April 28, 2012, during the spring semester of Plaintiff's freshman year, Plaintiff attended a party at an interest house on Broad Street with his friends. As it was Jane Doe 3's birthday, also a freshman, the group of friends all became intoxicated.

As the party was winding down, Plaintiff's best friend texted him that Jane Doe 3 told him she wanted to go home with Plaintiff. Right after receiving the text, Jane Doe 3 came over to Plaintiff and started flirting, asking if he was walking back up the hill. When he responded that he was, the two decided to walk back to their dorms together.

As Plaintiff and Jane Doe 3 walked up the hill, they stopped multiple times to make out. They agreed they wanted to take things further, however they both had roommates that had stayed in that night, so they had nowhere private to go.

Plaintiff thought they might be able to find some privacy at the Ho Science Center so they began to walk in that direction. However, when they were unable to gain access to the

4

building, Plaintiff and Jane Doe 3 sat down on a bench nearby and continued to kiss. Jane Doe 3 actively engaged in kissing Plaintiff for approximately fifteen to twenty minutes.

As they kissed, Plaintiff and Jane Doe 3 simultaneously touched each other over their clothing. At one point, Plaintiff began to move his hand up the bottom of Jane Doe 3's shirt and Jane Doe 3 stopped him; she indicated that she wanted to take things further with Plaintiff but was uncomfortable engaging in sexual activity outside. When Plaintiff tried to persuade Jane Doe 3 to continue, Jane Doe 3 became upset and decided she did not want to proceed any further. As soon as Jane Doe 3 indicated that she did not want to continue, all sexual interaction ceased and the two began walking back to the dorms together.

When they arrived at the dorms, Jane Doe 3 said good night to Plaintiff in a manner that indicated she was angry. Plaintiff walked home alone and texted her something to the effect of, "I'm sorry, and I hope we can still be friends."

On Tuesday, October 28, 2014 at approximately 12:00 p.m., nearly three years after Incident 2 allegedly occurred, Jane Doe 2 submitted an anonymous formal complaint of sexual misconduct against Plaintiff.

Two hours later, on Tuesday, October 28, 2014 at approximately 2:00 p.m., three years to the day after Incident 1 allegedly occurred, Jane Doe 1 submitted an anonymous formal complaint of sexual misconduct against Plaintiff.

Finally, 18 hours later, on Wednesday, October 29, 2014 at approximately 8:00 a.m., more than two and a half years after Incident 3 allegedly occurred, Jane Doe 3 submitted an anonymous formal complaint of sexual misconduct against Plaintiff.

5

Although the complaints were initially filed on October 28 and 29, 2014, Colgate did not notify Plaintiff of the exact nature of the charges against him until March 24, 2015, five months after the investigation had commenced and two weeks prior to the Hearing.

On Thursday, December 4, 2014, Plaintiff was called to the office of Defendant Taylor, where he was given a No Contact Order for each complainant.

On Friday, December 12, 2014, Plaintiff met with Defendant Brogan and Defendant Flack. Plaintiff was informed for the first time that allegations of misconduct had been made against him; when he inquired as to what the specific allegations were, Defendant Brogan stated she could not share that information with John Doe yet, as this was just an "information gathering process." Nonetheless, Defendant Brogan questioned Plaintiff about the allegations, vaguely asking him whether he recalled ever being intimate with any of the complainants. Plaintiff was consequently forced to participate in the investigation process and begin formulating his defense to the charges, without being informed of the exact allegations against him.

During Colgate's disciplinary process, Defendants: (i) failed to conduct a timely investigation of the allegations and failed to timely bring the case to a close within sixty (60) days, while arbitrarily denying Plaintiff's reasonable request for an adjournment of the Hearing; (ii) failed to conduct a thorough and impartial investigation; (iii) evidenced a gender bias against Plaintiff as the male accused; (iv) performed a one-sided and biased investigation by failing to pursue all information and witnesses pertinent to the alleged incidents, choosing instead to focus on the testimony favorable to complainants; (v) made assessments of credibility and evidentiary weight with respect to each party and witness without any ascertainable rationale or logic; (vi) failed to question Plaintiff's witnesses about anything substantively related to the allegations;

6

(vii) failed to afford Plaintiff the requisite presumption of innocence required by a preponderance of the evidence standard; and (viii) the sanction was unwarranted and disproportionate in light of the circumstances, all of which demonstrated substantial procedural errors in violation of Title IX and other federal and/or state laws.

The Hearing proceeded on April 7, 2015 before the Equity Grievance Panel. Ultimately, on April 8, 2015, Defendant Taylor issued three decision letters, finding Plaintiff responsible for each of the violations alleged. Consequently, Colgate meted out the following sanctions to Plaintiff: as to Jane Doe 1's complaint, expulsion; as to Jane Doe 2's complaint, suspension through January 2016; and as to Jane Doe 3's complaint, expulsion (collectively, the "Sanction"). Thus, the three combined sanctions had the purpose and effect of permanently expelling Plaintiff from Colgate a mere thirty-nine (39) days prior to his expected graduation date.

In Colgate finding that Plaintiff was "responsible" for violating Colgate's policies, Plaintiff was deprived of the most basic due process and equal protection rights and was discriminated against on the basis of his male sex. As a result of Colgate's acceptance at face value of the accusations made by Jane Doe 1, Jane Doe 2 and Jane Doe 3, defective procedures throughout the investigation and hearing process, and disproportionate punishment assessed, Plaintiff's reputation is tarnished, his educational future is blocked and his career prospects are ruined.

Colgate's Sanction of expulsion has not only terminated his undergraduate education, but has also left a stain on his record that will limit his choices to complete his education at another institution, and ultimately obstruct his plans to attend medical school.

As a result of Colgate's actions, Plaintiff's parents' financial resources used to provide Plaintiff with an education at an esteemed four-year institution have been squandered.

As a result of Colgate's actions, Plaintiff's academic and disciplinary records are irrevocably and irreversibly tarnished and will not withstand scrutiny by transfer to any other educational institution, including graduate studies.

As a result of Colgate's actions, Plaintiff's entire academic career has been ruined and, without a college education, his overall economic future is completely compromised. Plaintiff's future career prospect to become a physician has been put on hold indefinitely.

Without appropriate redress, the unjustified Sanction will continue to cause irreversible damage to Plaintiff.

Plaintiff seeks redress from this Court to undo the wrongs occasioned by Colgate to his education and future.

In light of these facts, Plaintiff should be permitted to protect his identity by filing the Complaint under a pseudonym. Plaintiff is prepared to address measures to protect the confidentiality of his identity should the Court require disclosure to the public at a later stage in the proceedings.

## ARGUMENT

Many federal courts have permitted parties to proceed anonymously when special circumstances arise. Generally, in determining whether to permit a party to proceed anonymously, a court "must balance the need for anonymity against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party." *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F. 3d 1058, 1068 (9th Cir. 2000). The Second Circuit has articulated a non-exhaustive list of factors for conducting this balancing test: (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether

8

identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice, if any, differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff. Doe v. Cuomo, No. 10-CV-1534 TJM/CFH, 2013 WL 1213174, at *5 (N.D.N.Y. 2013). As outlined below, a balancing of the above noted factors leads to the inevitable conclusion that Plaintiff must be permitted to proceed anonymously in this litigation.

### A. The litigation involves matters that are highly sensitive and of a personal nature.

Plaintiff should be permitted to proceed under a pseudonym given the highly sensitive and personal nature of this litigation. Plaintiff does not merely contend that the revelation of his name would result in embarrassment or public humiliation. Rather, Plaintiff notes the highly sensitive nature and privacy issues that could be involved with being falsely linked to multiple instances of alleged sexual misconduct. In fact, numerous courts around the country have permitted plaintiffs alleging parallel claims against colleges and universities to proceed

9

anonymously. *See e.g.* John Doe v. Columbia University and Trustees of Columbia University, 2014 WL 6471520 (S.D.N.Y. 2014); Doe v. Univ. of the South, 687 F. Supp. 2d 744 (E.D. Tenn. 2009); Doe v. Univ. of Massachusetts-Amherst, 2015 WL 4306521 (D. Mass. 2015); Doe v. Univ. of S. Florida Bd. of Trustees, 2015 WL 3453753 (M.D. Fla. 2015); Doe v. Salisbury Univ., 2015 WL 3478134 (D. Md. 2015); Doe v. Univ. of Montana, 2012 WL 2416481 (D. Mont. 2012)("With respect to the individual students involved in the Student Conduct Code proceeding, as well as the witnesses and University Court members involved in that proceeding, the Court finds that the interests of those individuals in avoiding undue embarrassment, harassment, and disclosure of sensitive private information outweigh the public's need to know their names," *citing to* Does I–XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1068–69 (9th Cir.2000)). Similarly, Plaintiff here should be permitted to proceed anonymously due to the highly sensitive and personal nature associated with being falsely accused of sexual misconduct.

**B. Disclosure of Plaintiff's identity would result in significant harm to Plaintiff.**

In addition, Plaintiff should be permitted to proceed anonymously in this matter as the revelation of his identify would result in significant harm to Plaintiff, the exact type of which he seeks to remedy by the commencement of this lawsuit. Specifically, if Plaintiff were required to reveal his identity, any ultimate success in this matter would be negated by the disclosure of his name. Namely, even if he were to achieve a removal of the expulsion from all academic records, Plaintiff would nonetheless be significantly hindered in his ability to pursue future career and educational endeavors, including graduate studies, as any entity or employer would undoubtedly have access to the records related to this matter and discover that Plaintiff was falsely accused of sexual misconduct. It is widely known that the likelihood of acceptance as a transfer student for an undergraduate degree at an institution with a similar academic reputation, and to a graduate

institution or medical school of high caliber is significantly reduced in light of the high number of applicants and stiff competition, let alone the social stigma associated with being found responsible and expelled for "sexual misconduct," regardless of whether the decision is ultimately overturned as a result of litigation. Based on the foregoing, John Doe should be permitted to proceed anonymously as requiring him to reveal his identity would result in significant harm to John Doe, including the exact damages he seeks to remedy in this matter; namely, physical, psychological, emotional and reputational damages, economic injuries and the loss of educational and career opportunities.

### C. Defendants will not be prejudiced by allowing Plaintiff to proceed pseudonymously.

Further, Plaintiff should be permitted to proceed anonymously as Defendants will not be prejudiced in any way by proceeding against an anonymous party. "Other than the need to make redactions and take measures not to disclose plaintiff's identity, defendants will not be hampered or inconvenienced merely by Plaintiff's anonymity in court papers." Doe No. 2 v. Kolko, 242 F.R.D. 193, 198 (E.D.N.Y. 2006). Significantly, defendants are already aware of Plaintiff's true identity. Thus, there is no doubt that defendants will have an unobstructed opportunity to conduct discovery, present their defenses and litigate this matter, regardless of whether Plaintiff identifies himself or proceeds anonymously. Accordingly, Plaintiff must be permitted to proceed anonymously in this action as revealing his name will cause significant prejudice to Plaintiff, while proceeding anonymously will not hinder defendants in any way.

### D. There is a weak public interest in knowing Plaintiff's identity.

Plaintiff should also be permitted to proceed in this action anonymously as the public does not have a strong interest in knowing his identity. Considering the purely legal nature of the claims presented (i.e. Defendants violated Plaintiff's right to fair process in violation of Title IX and other federal and/or state law), there is a weak public interest in learning Plaintiff's identity as an individual. The public's interest in this matter would not be furthered by disclosing Plaintiff's identity, as his challenges to Colgate's biased and unfair investigatory process concerns a larger association than the interest of an individual plaintiff; it affects the male student population at Colgate as a whole. *See* Doe No. 2 v. Kolko, 242 F.R.D. 193, 195 (E.D.N.Y. 2006).

While in the past, courts strongly disfavored allowing plaintiffs to proceed anonymously except in extreme circumstances, the nature of the internet today is such that any plaintiff is readily accessible via a simple online search; thus, courts must be willing to afford additional protective measures to avoid further damage to a plaintiff involved in a matter concerning such egregious and unfounded violations as the present one. Here, if Plaintiff were required to reveal his name, even if Plaintiff were to succeed on his claims against defendants, the public's access to his identity would result in further damage to his future educational and career endeavors, resulting in additional mental, emotional and psychological harm, the very harms which he seeks to remedy in this action.

Thus, there is simply nothing about the status of the Plaintiff that would heighten any public interest beyond the normal public interest in any judicial proceedings sufficient to outweigh Plaintiff's right to privacy. Moreover, the public's knowledge will only be minimally restricted as it will still know what is alleged to have occurred that resulted in charges of sexual misconduct being filed, and how the defendants investigated and adjudicated those charges.

Allowing Plaintiff to proceed anonymously will not significantly obstruct the public's interest in this matter. Accordingly, there is not a strong public interest in knowing Plaintiff's identity as an individual, as the issues presented to this Court concern a much greater population of potential plaintiffs.

Based on the foregoing, in consideration of the balancing of relevant factors, the Court should allow Plaintiff to employ a pseudonym in this matter. The interests of defendants and/or the public will not be harmed at this early stage of the case if Plaintiff's name is not revealed. Plaintiff and his attorneys are prepared to address measures to protect the confidentiality of his identity should the Court require disclosure to the public at a later stage in the proceedings.

## CONCLUSION

For these reasons and such other reasons as may appear just to the Court, Plaintiff John Doe requests that his *Ex Parte* Motion to Proceed Under Pseudonym and for Protective Order be granted in its entirety.

Dated: New York, New York
September 15, 2015

        Respectfully submitted,

        NESENOFF & MILTENBERG, LLP
        *Attorneys for Plaintiff John Doe*

        By:_____
            Andrew T. Miltenberg, Esq. (517014)
            Tara J. Novack, Esq. (*admission pending*)
            363 Seventh Avenue, Fifth Floor
            New York, New York 10001
            (212) 736-4500

amiltenberg@nmllplaw.com
tnovack@nmllplaw.com